## PEOPLE *v.* ASTA.

1. Arrest—Felony—Without Warrant.

   Arrest of defendants, without warrant, for violation of the cigarette tax act, a felony, was justified, where the officers found defendants transferring untaxed cigarettes from licensed interstate common carrier's truck to defendants' truck which was neither licensed to transport goods in interstate commerce nor to transport cigarettes in this State, and such arrest was made upon direction of superior officers (CL 1948, § 205.-501 *et seq.,* as amended by PA 1949, No 312, and PA 1951, No 78).

2. Taxation—Cigarette Tax Act—Uniformity—Administrative Discretion as to Amount of License.

   The cigarette tax act is not void as to defendants for lack of uniformity by reason of the fact that the department of revenue could and did charge a lesser sum than the maximum of $150 for licensing an unclassified acquirer of cigarettes, where defendants do not claim that they had applied for a license as unclassified acquirers (CL 1948, § 205.501 *et seq.,* as amended by PA 1949, No 312, and PA 1951, No 78).

---

References for Points in Headnotes

[1] 4 Am Jur, Arrest § 25.
[2] 51 Am Jur, Taxation § 159.
[3] 51 Am Jur, Taxation § 156 *et seq.*
[4] 51 Am Jur, Taxation § 321 *et seq.*
[5] 11 Am Jur, Commerce, § 74.
   51 Am Jur, Taxation § 205.

3. CONSTITUTIONAL LAW—SPECIFIC TAXES—UNIFORMITY OF OPERATION UPON CLASSES.

> The provision of the State Constitution relative to uniformity of specific taxes requires that they be uniform upon the classes upon which they operate (Const 1908, art 10, § 4).

4. STATUTES—CIGARETTE TAX ACT—PUBLIC PEACE, HEALTH AND SAFETY—IMMEDIATE EFFECT.

> The statute imposing a specific tax upon cigarettes and amendment thereto may fairly be said to have to do with the public peace, health and safety; hence, it was proper for the legislature to give them immediate effect (Const 1908, art 5, § 21; CL 1948, § 205.501 et seq., as amended by PA 1949, No 312, and PA 1951, No 78).

5. COMMERCE—INTERSTATE COMMERCE—CIGARETTES AT DESTINATION—DELIVERY.

> Shipment of untaxed cigarettes which had arrived at its destination and which had been delivered was properly seized for violation of State cigarette tax act, there being no interstate commerce thereafter to be considered (CL 1948, § 205.501 et seq., as amended by PA 1949, No 312, and PA 1951, No 78).

Appeal from the Recorder's Court for the City of Detroit; Ide (O. Z.), J. Submitted June 28, 1955. (Docket No. 75, Calendar No. 45,726.) Decided October 11, 1955.

Dominic J. Asta and Frank Navarro were convicted of violation of State cigarette tax act. Affirmed.

Thomas M. Kavanagh, Attorney General, Edmund E. Shepherd, Solicitor General, and T. Carl Holbrook, Assistant Attorney General, for plaintiff.

Frank H. Finney, for defendants.

REID, J. Defendants (appellants) Dominic J. Asta and Frank Navarro were arrested in the city of De-

troit on June 26, 1951.* On June 28 they were arraigned on a warrant charging them with violation of the State cigarette tax act. On July 25, 1951, an examination was conducted before a judge of the recorder's court and defendants were bound over for trial. Defendants filed a written motion to quash the warrant and information for the reasons:

1. That section 3 of the statute is an unconstitutional delegation of the legislature's taxing power to an administrative body;

2. That the immediate effect clause of the act is invalid, and that the statute was therefore not in effect at the time of the offense alleged;

3. That sufficient evidence was not shown at the examination to bind the defendants over for trial;

4. That there was no valid arrest and seizure;

5. That the statute violates the interstate commerce clause of the Federal Constitution;

6. That the statute is unconstitutional in that the license fee sought to be imposed lacked uniformity;

7. That the section of the statute here sought to be enforced is unconstitutional in that it violates the equal protection clause of the Federal Constitution.

The court denied this motion to quash. Defendants made no motion to suppress the evidence seized by the officers on the occasion of the arrest.

Defendants were tried in recorder's court on January 21, 1952, on a charge of violation of the State cigarette tax act, being PA 1947, No 265 (CL 1948, § 205.501 et seq., as amended by PA 1949, No 312, and by PA 1951, No 78 [Stat Ann 1950 Rev and Stat Ann 1951 Cum Supp § 7.411 (1) et seq.]). The defendants were represented by separate attorneys.

A witness, Andrew Berge, an employee of the Detroit police department, was called in behalf of the people and testified that on June 26, 1951, he, in-

---

* For action by the defendant attempting to compel the vacation of order of confiscation, see Asta v. Department of Revenue, 338 Mich 505.—REPORTER.

company with Francis Gildersleeve, another Detroit police officer, observed the defendants at the rear of a store building located at 341 South Schaefer, in the city of Detroit, and State of Michigan, and that seeing 2 trucks, their rear ends backed together, they conducted an investigation. He testified further that there was a space between the trucks of approximately 1 foot, and that the defendants, with one James Rich, were engaged in transferring from a truck driven by James Rich cases of cigarettes into a truck being used by the defendants. Further, that he arrested them, the defendants, and that during the course of his interrogation of the defendants, it was admitted to him that the cigarettes were tax free. He further testified that he called his precinct station and that detectives were dispatched to the scene of the arrest and that the cigarettes were confiscated. He testified, further, that the consignee noted on the bill of lading was one "Joe Spezia," but that subsequently, the defendant, Dominic Asta, admitted to him that Joe Spezia and Dominic Asta were one and the same person.

Francis A. Gildersleeve, a Detroit police officer, a witness for the people, gave testimony substantially the same as that of officer Andrew Berge. This witness, however, testified that the defendants were not arrested and detained by him and officer Berge for violation of the Michigan State cigarette tax act and that he knew of no violation of the law being committed at the time the arrest was made.

Witness Marion W. Boyd testified as a witness for the people and stated that he was an employee of the Hancock Trucking Company, and that on June 26, 1951, he hauled from Lima, Ohio, a trailer load of cigarettes in a trailer number 465, and that said truck was delivered by him to the Detroit, Michigan, terminal on the morning of June 26, 1951.

Mr. Burke Sheen was a witness for the people. His testimony was to the effect that he was an employee of the Hancock company on June 26, 1951, that he worked as a dispatcher, and that he was present in Hancock's Detroit, Michigan terminal when trailer number 465 was there parked. He testified, further, that he had dispatched the driver, people's witness Rich, at the telephoned request of some unidentified person to the scene of the subsequent arrest at Raupp road and Schaefer road, in the city of Detroit. He testified, further, that the employees of his company are required to secure the signature of a consignee before relinquishing possession to a consignee.

Mr. James Rich, a truck driver and employee of Hancock Trucking, testified for the people and stated that on June 26, 1951, he was dispatched to Raupp road and Schaefer road, in the city of Detroit, with a trailer load of cigarettes; that he met the defendants in the rear of 341 South Schaefer road, Detroit, Michigan; that they identified themselves as being the proper consignee named in the bill of lading; that he was in the process of transferring the cases of cigarettes from his trailer to the truck being operated by the defendants; that the police officers intervened and that after talking with him that the officers called the defendants from their truck and questioned them.

He testified, further, that he was required to secure the signature of a consignee before relinquishing possession, and that neither the bill of lading nor receipt, in this transaction, had been signed. On cross-examination, this witness admitted that the defendants had not signed the receipt, showing delivery; that had they refused to sign he, the witness, would have been under an obligation to return the merchandise to his employer, the common carrier. He testified, further, that he and the defendants had

transferred only 26 cases and that there remained, at the time of the intervention, of the police officers, 192 cases in the trailer.

Mr. Roy Struble was called by the people and testified that he was an employee of the Michigan department of revenue, and that neither of the defendants had secured a license of any type. He further testified that he knew of no license required of the defendants other than that of "unclassified acquirers," that the license fee of unclassified acquirers might be any sum ranging from $1 to $150, and that the setting of such license fee was discretionary with the commissioner of revenue. At this point, it was stipulated by Mr. Nathan J. Kaufman, assistant prosecutor for Wayne county, that different applicants for unclassified acquirers' licenses under the cigarette tax act had been required to pay different license fees.

Mr. George K. Constan was called as a witness for the people and testified that he was the owner of a restaurant located at 341 South Schaefer road, Detroit, and that in back of his restaurant there was a vacant field, and he further stated that he did not order a large consignment of cigarettes to be delivered to him at that address.

Mr. Harry Reimars was called as a witness for the people and testified that he was an employee of the interstate commerce commission, that he had charge of the records of the bureau of motor carriers, and that having checked said records he could find no record of the issuance of a permit for interstate commerce to either of the defendants, or one Joe Spezia. He further testified that the Hancock Transportation Company was a licensed common carrier under the interstate commerce commission.

Detective Knutson was called as a witness for the people and testified that he was a detective on the police department of the city of Detroit, that he had

gone to Raupp road and Schaefer road, in the city of Detroit and State of Michigan, June 26, 1951, having been called to that address by officer Berge and officer Gildersleeve; that the defendants had been held there until he arrived.

A motion for a directed verdict of not guilty was denied by the court at the conclusion of the proofs submitted by the people. This motion was predicated upon defendants' claim that the arrest, search and seizure were unlawful, and that the cigarette tax act and any proceedings based on it were unconstitutional and void. The defendants did not testify and no witnesses were called in their behalf.

The prosecutor waived the allegations of "acquiring and transportation," of the cigarettes in question.

The court instructed the jury to deliberate, as a question of fact, whether or not the defendants had "possession" of the cigarettes.

The jury returned a verdict of guilty as to each defendant.

The court on February 6, 1952, sentenced the defendant, Dominic Asta, to a term of 9 months to 5 years in the State prison for southern Michigan, and sentenced the defendant, Frank Navarro, to a term of 6 months to 5 years in the State prison for southern Michigan.

Motion for new trial was made on behalf of the defendants setting forth as grounds for a new trial practically the same grounds which are set forth in the application for leave to appeal, which is as follows:

1. The trial court erred in overruling defendants' motion of a directed verdict of not guilty when the testimony of the arresting officers clearly showed an illegal arrest, search and seizure.

2. The trial court erred in refusing to rule on the constitutionality of the Michigan cigarette tax act

after stipulation that the act was not uniform as applied to unclassified acquirers. (See CL 1948, § 205.503, as amended by PA 1951, No 78 [Stat Ann 1951 Cum Supp § 7.411(3)], which contains the words, "The fees for licenses shall be as follows: * * * An unclassified acquirer's license, a sum determined by the department, but not to exceed $150.00.")

3. The trial court erred in submitting to the jury the question of possession by the defendants when the testimony of the agents of the common carrier clearly showed possession to be in said common carrier.

The motion for a new trial was heard and finally denied on June 22, 1952, by the Honorable O. Z. Ide, judge of the recorder's court of the city of Detroit.

The foregoing facts disclose sufficient grounds to justify the ruling of the court denying defendants' motion for a directed verdict of not guilty, on alleged grounds of illegal arrest, search and seizure. The officers were justified at the time in making the arrest. They were unfamiliar with the provisions of the cigarette tax act. Before they made the arrest they telephoned to their superiors at the police headquarters, stating the facts at the time, and were directed by their superiors to make the arrest for violation of the cigarette tax act. The facts justified the officers in believing defendants guilty of a felony.

The cigarette tax act in question is not void for any reasons alleged by defendants, namely, lack of uniformity of the act, unlawful delegation of taxing power to an administrative body, unlawful interference with interstate commerce carrier, and ineffectual attempt of the legislature to give immediate effect to a tax statute under guise of police power when the act in fact did not deal with public health, safety or morals.

The power giving the department authority to fix

a lesser sum than the $150 to unclassified acquirers of cigarettes seems to have been meant to include authority to exercise discretion dependent upon the importance of their acquisition. It is not open to defendants to question this statutory provision which is not in any case applicable to them. Defendants do not claim that they applied for a license as unclassified acquirers.

The provision in the State Constitution (1908), art 10, § 4 is as follows:

"The legislature may by law impose specific taxes, which shall be uniform upon the classes upon which they operate."

This provision requires uniformity as to classes and is applicable to specific taxes. The tax in question is specific. See *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659 (syllabus 11). See, also, *Cunningham Drug Stores, Inc.,* v. *Commissioner of Revenue,* 319 Mich 467, 469; *People* v. *Asta,* 337 Mich 590, 595.

The act in question was properly given immediate effect under the Constitution (1908), art 5, § 21, the portion of the Constitution in question being as follows:

"No act shall take effect or be in force until the expiration of 90 days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a 2/3 vote of the members elected to each house."

It may fairly be said that the imposition of the specific tax in question and amendment to the act in question have to do with the public peace, health and safety.

The shipment of cigarettes had arrived at its destination and no interstate commerce was thereafter to be considered as involved, as to cigarettes already

delivered. No reversible error was committed by the trial court. The judgment appealed from is affirmed in the case of each defendant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, DETHMERS, and KELLY, JJ., concurred with REID, J.

BOYLES, J., concurred in the result.